UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DONALD PAWLIK,                    )
                                  )
            Plaintiff             )
                                  )
       v.                         )   Case No. 2:07 cv 220
                                  )
INDUSTRIAL ENGINEERING AND        )
EQUIPMENT COMPANY, INC.,          )
                                  )
            Defendant             )

<u>OPINION AND ORDER</u>

This matter is before the court on the Motion for Summary Judgment [DE 18] filed by the defendant, Industrial Engineering and Equipment Company, Inc., on July 11, 2008; the Motion to Strike or for Additional Time to Respond to Plaintiff's Response to Motion for Summary Judgment [DE 22] filed by Industrial Engineering on August 19, 2008; the Motion to Exclude Opinions of Plaintiff's Expert, Sterling Anthony [DE 25] filed by Industrial Engineering on August 26, 2008; and the Motion for Extension of Time to Disclose Damages Experts [DE 29] filed by Industrial Engineering on January 13, 2009.  For the following reasons, the Motion for Summary Judgment [DE 18] is **GRANTED IN PART** and **DENIED IN PART**; the Motion to Strike or for Additional Time to Respond to Plaintiff's Response to Motion for Summary Judgment [DE 22] is **GRANTED IN PART** and **DENIED IN PART**; the Motion to Exclude Opinions of Plaintiff's Expert, Sterling Anthony [DE 25] is **GRANTED IN PART** and **DENIED IN PART**; and the Motion for Extension of Time

to Disclose Damages Experts [DE 29] is **DENIED.**

## Background

This cause of action arose when Donald Pawlik, a recent high school graduate and self-described "hands-on" type of guy, loaded a crate containing three electric duct heaters made by Industrial Engineering and Equipment Company, Inc. onto one of the trucks of his employer, Circle R Mechanical, Incorporated. (Deposition of Donald Pawlik, pp. 12-13) Industrial designs and manufactures commercial and industrial electric heating and control systems. (Deft. Ex. B) Circle R is a contractor specializing in the manufacturing and installation of commercial and industrial heating, ventilation, air conditioning, and plumbing systems. Industrial sold duct heaters through a distributor which were shipped to Circle R ultimately for installation in a facility in Portage, Indiana. (Deposition of Tom Heckman, p.7)

The heaters in question weighed 310 pounds. (Deft. Ex. E) For protection in shipping, the heaters were wrapped with plas-tic, placed on a standard wood pallet, then encased in a crate constructed of 1" X 6" wood slatboards fastened to the pallet by staples and nails. A forklift was used to load the crate onto the truck for transport from Industrial's plant in Cuba, Mis-souri, to the Circle R facility in Portage, Indiana.

Upon arrival at Circle R on May 25, 2006, the carrier truck was backed down a receiving dock carved into the parking lot which allows the rear bed of a delivery truck to be at ground level with "no dropoff or nothing like that" for more accessible

2

unloading. (Pawlik Dep. p. 54) Pawlik himself visually in-
spected the crate, found it undamaged, then used a forklift to
remove the crate from the delivery truck and set it on the ground
outside an overhead garage door at Circle R. (Pawlik Dep. pp.
67-69, 97) At the time, no Circle R truck was available to
transport the crate to its installation site. When a Circle R
truck arrived, Pawlik backed the truck up as close as possible to
the crate on the ground, then he lowered the elevator-like rear
lift of the truck to the ground and began to "slide" the crate
toward the lift until the crate was sufficiently on the lift to
be raised. (Pawlik Dep. pp. 100-01) Once the lift and crate
were raised to the level of the truck bed, Pawlik climbed into
the bed of the truck and began to shimmy the crate by alternately
pulling one side, then the other, in an effort to move it from
the lift into the bed of the truck. Although Circle R had a
forklift, a pallet jack, a hand truck, and an equipment roller
available for moving heavy items on wooden pallets, as well as a
method of nudging a heavy, loaded pallet back onto a truck by
shoving an empty pallet against it with the forklift, Pawlik
opted to "just manhandle" the heavy crate in an effort to save
time. (Pawlik Dep. pp. 57-58; Deposition of Brett Heisler pp.
11-12, 15-16) In the course of manually tugging on the wooden
crate, Pawlik claims that at least one slat detached, causing him
to fall backwards into the bed of the truck onto exposed sheet
metal products that Pawlik previously had placed there. (Pawlik
Dep. p. 103) Pawlik suffered a severe, bone-deep cut to his left

wrist which required surgery to reattach severed veins, tendons, arteries, and nerves, as well as a skin graft. These injuries have caused him to suffer "severe, severe pain." (Pltf. Ex. A, Part 1, p. 11) As a result of the injury, Pawlik also claims to be suffering from personality and mood changes which require medication. (Pltf. Ex. A, Part 3, pp. 9, 16) Co-workers took photos of the scene on the bed of the truck depicting the crate and the sharp sheet metal object that Pawlik fell on, all splattered with blood. (Deft. Ex. B) These photos are all the evidence that remains from the incident, as the crate subsequently was delivered to its intended destination and then destroyed. (Pltf. Memo. in Opp. p. 19)

Pawlik filed his complaint in the Porter County Superior Court on May 25, 2007, alleging strict liability, negligence, and breach of express and implied warranties for the fractured crate incident. Industrial answered, then removed the case to federal court.

Industrial filed its Motion for Summary Judgment on July 11, 2008, which requests the court to grant summary judgment as a matter of law under the Indiana Products Liability Act with respect to all three of Pawlik's claims. Industrial argues that several factors of the IPLA are not fulfilled and that defenses under the IPLA apply to Pawlik's unforeseeable use of the crate and incurred risk of injury. The expert disclosure in support of Industrial's summary judgment states simply:

In the case of large and/or heavy items pack-

4

aged in crates, such as the items involved in
this incident, the use of a fork-truck, pal-
let jack, or some other safe method of me-
chanical handling is the intended and typical
handling method.  Any packaging system con-
sisting of a crate with fork entry slots is
clearly intended for mechanical handling
only.

(Deft. Ex. J, p. 2)

Pawlik responded by arguing that he has established a prima
facie case under the IPLA and by asserting that if the IPLA does
not govern his claims, the common law negligence and breach of
implied warranty claims survive.  Industrial filed its motion to
strike this response alleging the response brief did not adhere
to the font and page requirements of the local rules, or alterna-
tively, asking for ten extra days to file its reply to the over-
sized brief.  Pawlik conceded the failure to conform with the
rules and expressed no objection to the time extension.

On August 26, 2008, Industrial filed its Motion to Exclude
Opinion of Plaintiff's Expert, Sterling Anthony.  Industrial
argues that Anthony's opinions are not based on proper founda-
tion, make improper legal conclusions, and in two statements are
prejudicial and lack probative value.  Pawlik responded - with a
brief that again fails to conform to Local Rule 7.1(d) in length
- by reciting Anthony's expertise and experience, neither of
which was questioned, arguing that the conclusions are "fodder
for cross examination" rather than bases for exclusion, and
explaining that Anthony's opinions are offered to satisfy the

burden under the IPLA concerning a defective and unreasonably dangerous product. (Pltf. Resp. p. 22)

Finally, on January 13, 2009, Industrial filed its Motion for Extension of Time to Disclose Damages Experts. It contends that although the parties have extended deadlines for the disclosure of experts, due to the number of experts and the nature of Pawlik's medical treatment and condition, Industrial needs an additional 45 days for disclosure of damages experts, up to and including February 27, 2009. Pawlik responded, noting the May 2009 trial date, reciting the dates in 2007 and 2008 when plaintiff produced reports and disclosures, and noting the agreed upon 90-day extension from October 13, 2008, to the date of this motion, January 13, 2009, during which Industrial failed to pursue any further disclosures.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See **Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986); ***Williams v. Excel Foundry & Machine, Inc.***, 489 F.3d 309, 310 (7th Cir. 2007); ***Treadwell v. Office of the Illinois Secretary of State***, 455 F.3d 778, 781 (7th Cir. 2006); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue

6

must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also* ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990)(stating same).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp*., 477 U.S. at 322-23, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc*., 327 F.3d 569, 573 (7th Cir. 2003).

As a preliminary matter, the court must address the Motion to Strike or for Additional Time to Respond to Plaintiff's Response to Motion for Summary Judgment, in which Industrial correctly points out that Pawlik's Response brief failed to comply with the requirements of Local Rules 5.1(a) and 7.1. This clever editing compressed Pawlik's brief within the 25 page limit

imposed by the rules, and Industrial is correct in its assertion that the court in its discretion may strike the brief. Industrial offers as an alternative the option of granting it a ten-day extension in which to reply to the over-sized brief.

Because the court's preference is to judge the motion on its merits, the court will not strike the Response.[1] Due to the agreement expressed by Pawlik to allow an extension of time for Industrial to reply and in an effort to allow the court to be fully briefed on the merits here, the extension of time to file its reply is granted, and Industrial's Reply brief timely. As such, the Motion to Strike or for Additional Time to Respond to Plaintiff's Response to Motion for Summary Judgment [DE 22] is **GRANTED IN PART** and **DENIED IN PART.**

The complaint asserts a strict liability claim against Industrial, which comes within the scope of the Indiana Products Liability Act, Indiana Code Sections 34-20-1-1 through 34-20-9-1. Section 34-20-1-1 provides:

> This article governs all actions that are:
>
> (1) brought by a user or consumer;
>
> (2) against a manufacturer or seller; and
>
> (3) for physical harm caused by a product;

---

[1]The court takes notice, however, of Pawlik's continued violation of Local Rule 7.1 when filing the later response to the Motion to Exclude Plaintiff's Expert, Sterling Anthony, after being apprised of the first failure to comply.

regardless of the substantive legal theory or
theories upon which the action is brought.

Indiana Code Section 34-20-2-1 sets forth the requirements of a
strict liability claim:

> [A] person who sells, leases, or otherwise
> puts into the stream of commerce any product
> in a defective condition unreasonably danger-
> ous to any user or consumer or to the user's
> or consumer's property is subject to liabil-
> ity for physical harm caused by that product
> to the user or consumer or to the user's or
> consumer's property if:
>
>> (1) that user or consumer is in the
>> class of persons that the seller should
>> reasonably foresee as being subject to
>> the harm caused by the defective condi-
>> tion;
>>
>> (2) the seller is engaged in the busi-
>> ness of selling the product; and
>>
>> (3) the product is expected to and does
>> reach the user or consumer without sub-
>> stantial alteration in the condition in
>> which the product is sold by the person
>> sought to be held liable under this
>> article.

Indiana Code Section 34-6-2-29 defines a "consumer" as:

>> (1) a purchaser;
>>
>> (2) any individual who uses or consumes
>> the product;
>>
>> (3) any other person who, while acting
>> for or on behalf of the injured party,
>> was in possession and control of the
>> product in question; or
>>
>> (4) any bystander injured by the product
>> who would reasonably be expected to be
>> in the vicinity of the product during
>> its reasonably expected use.

To begin, Industrial asserts that neither Circle R nor Pawlik is a "user or consumer" as contemplated by I.C. §24-30-1-1. The Indiana Supreme Court in *Estate of Shebel v. Yaskawa Electric America, Inc.*, clearly defines a "user or consumer" noting that "it was early held, and we agree, that 'user or consumer' does not include one who merely acquires and resells." 713 N.E.2d 275, 278 (Ind. 1999)(*citing Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562 (Ind. App. 1986). "[W]ho is a 'user or consumer' is a purely legal question." *Yaskawa*, 713 N.E.2d at 279. In discussing whether the American subsidiary distributor of the Japanese manufacturer of lathes could be a "user or consumer," the court distinguished between the distributor when it assembled and demonstrated the lathe at trade shows and the distributor when it acquired, assembled, and resold the lathe to purchasing customers. When demonstrating the lathe at trade shows, the American distributor became a "user or consumer," but in the "case of possession of the lathe only for resale or for assembling its component parts" the distributor was not a "user or consumer." *Yaskawa*, 713 N.E.2d at 279. *See also Thiele*, 489 N.E.2d at 562 (holding distributor not a "user or consumer"); *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480 (Ind. App. 1984)(holding retailers who stored and sold gun and ammunition were not "users or consumers"); *Wilson v. Studebaker-Worthington, Inc.*, 699 F.Supp. 711 (S.D. Ind. 1987)(holding assembler of turbine was not "user or consumer").

Here, Circle R and Pawlik do not fit the definition of a "user or consumer" of the heaters or the crate which packaged the heaters. Circle R received the heaters, then delivered and installed them to the ultimate "user or customer." Unlike the trade show demonstrations from *Yaskawa*, Pawlik, in his employment with Circle R, did not "use" the product at all - he simply was involved in the transport of the product. In his transport of the crate, Pawlik was analogous to the distributer who "acquires, assembles, and resells" a product, but does not use or consume it. Therefore, Pawlik cannot be a "user or consumer" under the IPLA.

Next, Industrial argues that it is not a seller of the "product" in question, the crate. Industrial offers *Crist v. K-Mart Corporation*, 653 N.E.2d 140 (Ind. App. 1995), as comparable case law, and the case is precisely on point. In *Crist*, a truck driver was injured while unloading a shipment of boxes from a K-Mart distribution center when a box that he was standing upon collapsed and sent him to the trailer floor. The box had been packed with K-Mart products at the distribution center, to be opened and unpacked upon receipt at a retail store. The court emphasized that K-Mart did not sell the boxes, nor did the assembling of the boxes from preformed cardboard equate with the manufacture of boxes. K-Mart would "gratuitously provide boxes" as a means of transporting merchandise and at customers' requests, but such dealings "do not constitute the type of regular

business activity necessary to classify K-Mart as a seller of boxes."  *Crist*, 653 N.E.2d at 144.

Similarly here, Pawlik was injured while transferring a crate containing a product from Industrial's distribution center. The crate contained and protected the Industrial products and was not meant to be opened and unpacked until its receipt at the installation site.  Industrial does not sell crates, nor can Industrial be classified as a manufacturer of crates.  Like K-Mart, a crate built upon a pallet was used to protect and transport heavy products and the provision of such packaging does not make Industrial a seller of crates under the IPLA.  Because Industrial was not a seller of crates and Pawlik was not a user or consumer, the strict liability claim under the IPLA must fail.

Although Industrial also advances the defenses of misuse and incurred risk as grounds for summary judgment, both defenses are offered under the IPLA, which as demonstrated above, does not apply to this cause of action.  *See, e.g., Crist*, 653 N.E.2d at 144 ("The [IPLA] provides that if an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter.")(*quoting* and *citing* I.C. §33-1-1.5-2.5(c))(internal quotes omitted) (stating that the defense of misuse would bar judgment against K-Mart under IPLA).  Therefore, the court need not reach the merits of this defense provided by the IPLA.  Additionally, the misuse defense under the IPLA becomes part of the Comparative Fault Act under common law claims.  *See Barnard v. Saturn Corporation*, 790

N.E.2d 1023 (Ind. App. 2003)(examining misuse under the IPLA and the comparative fault scheme). Similarly, the defense of incurred risk, though a potential bar to recovery under the IPLA, is subject to the Comparative Fault Act when simply a negligence claim. ***Vaughn v. Daniels Co. (West Virginia), Inc.***, 841 N.E.2d 1133, 1146 (Ind. 2006).

Counts II and III of Pawlik's complaint, alleging Industrial's liability for negligence and breach of express and implied warranties, survive. Industrial's brief in support of the motion for summary judgment makes no mention of these common law claims, but implies that because the IPLA factors are not fulfilled, all liability is barred. This view is mistaken. The Indiana Supreme Court has spoken clearly on this point:

> Until 1995, the [IPLA] did not generally displace products liability law except for strict liability claims. In 1995 [ ] the [I]PLA was amended to provide that it applied to all claims of defective products against a "manufacturer" by a "user or consumer" regardless of the theory of liability. As a result, the [I]PLA now applies to all negligence claims brought against a "manufacturer" of a defective product by a "user" or "consumer." The [I]PLA is explicit that *it does not govern other claims*: "This article shall not be construed to limit any other action from being brought against a seller of a product." For the reasons given [above], Vaughn is not a "user" or "consumer" and therefore the Vaughns' negligence claims are governed by conventional common law negligence doctrines, not by the [I]PLA. (internal cites omitted)(emphasis added)

> 841 N.E.2d at 1144

Likewise, the misuse and incurred risk defenses become jury questions when analyzing the surviving negligence and breach of warranty claims. *Vaughn*, 841 N.E.2d at 1146.

Because Count I of Pawlik's complaint alleges strict products liability, it is subsumed by the IPLA and fails because Industrial was not a seller of crates and Pawlik was not a user or consumer as contemplated by the statute. Therefore, summary judgment on Count I is **GRANTED**. However, because the common law claims survive, summary judgement on Counts II and III is **DENIED**.

Industrial, in its Motion to Exclude Opinions of Plaintiff's Expert, Sterling Anthony, asks the court to exclude 33 statements from Anthony's report, as well as "discussion pertaining to diagonal boards and the crate assembly process, contained on pages 12 through 15" of the report, as well as any opinions relying on these points.[2] Industrial breaks down its arguments into three categories of evidentiary problems: (1) opinions not based on proper foundation; (2) opinions which are impermissible legal conclusions; and (3) statements and opinions where the probative value is outweighed by the danger of prejudice or confusion.

The admissibility of expert evidence is governed by Federal

---

[2]Anthony's report was included as an exhibit (Ex. G) in Pawlik's response to summary judgment. Industrial did not request that the report be stricken from consideration in regards to the summary judgment. However, the court, in addressing these motions as a group, considered the exhibit and ignored the legal conclusions drawn by Anthony when considering the merits of summary judgment. "The court has the ability to sift through the proffered evidence and determine which evidence is worth considering." *Davis v. Genova*, Case No. 4:07-cv-40-APR, slip op. at p. 12 (N.D. Ind. March 3, 2009).

Rule of Evidence 702, ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. ***Winters v. FruCon Inc.***, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under ***Daubert***, the court exercises a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. ***Winters***, 498 F.3d at 741; ***Kumho Tire Co., Ltd. v. Carmichael***, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The examination applies to all kinds of expert testimony." ***United States v. Conn***, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge)(*citing **Kumho Tire***, 526 U.S. at 149, 119 S.Ct. at 1167). The main purpose of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." ***Kumho Tire***, 526

U.S. at 152, 119 S.Ct. at 1176)

In light of **Daubert** and **Kumho Tire**, the Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702:  first, the court must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant."  **Hardiman v. Davita Inc.**, 2007 WL 1395568 (N.D. Ind. May 10, 2007).  Like all questions of admissibility, those regarding expert testimony are matters of law to be determined by the judge.  **Hardiman**, 2007 WL 1395568 at *2 (*quoting* and *citing* **Porter v. Whitehall Labs., Inc.**, 791 F.Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993).  "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence."  **Bickel v. Pfizer, Inc.**, 431 F.Supp.2d 918, 921 (N.D. Ind. 2006).

To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on sound methodology.  **Smith v. Ford Motor Co.**, 215 F.3d 713, 718 (7th Cir. 2000).  *See also* **Hardiman**, 2007 WL 1395568 at n.1 (discussing courts' ability to combine the qualifications inquiry into the reliability prong).  In determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ."  **United States v. Parra**, 402 F.3d 752, 758 (7th Cir. 2005)(*quoting* **Smith**, 215 F.3d at 718).  Still, "[a] court's reliability analysis does not end with its conclu-

sion that an expert is qualified to testify about a given matter.
. . . [T]he court's gatekeeping function [also] focuses on an
examination of the expert's methodology." *Smith*, 215 F.3d at
718. An expert's opinion is admissible "only to the extent it is
reasoned, uses the methods of the discipline, and is founded on
data. Talking off the cuff – deploying neither data nor analysis
– is not an acceptable methodology." *Lang v. Kohl's Food Stores,
Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

*Daubert* outlined the following factors in assessing an
expert's methodology:

> (1) whether a theory or technique . . . can
> be (and has been) tested; (2) whether the
> theory or technique has been subjected to
> peer review and publication; (3) the known or
> potential rate of error; (4) the existence
> and maintenance of standards controlling the
> technique's operation; and (5) whether the
> technique or method has met with general
> acceptance.
>
> *Conn*, 297 F.3d at 555 (*quoting Daubert*, 509
> U.S. at 593-94, 113 S.Ct. at 2786)

No matter what type of specialized information is proffered, "the
*Daubert* factors set forth above ought not be considered a defini-
tive check list suitable for the evaluation of all kinds of
evidentiary submissions involving specialized knowledge." *Conn*,
297 F.3d at 555-56. The list should be flexible "to account for
the various types of potentially appropriate expert testimony"
rather than definitive or exhaustive. *Deputy v. Lehman Bros.,
Inc.*, 345 F.3d 494, 505 (7th Cir. 2003). The court may tailor
its approach using the *Daubert* factors as a starting point in an

effort to evaluate the particular evidence before it. *Conn*, 297 F.3d at 556.

The expert testimony must "fit the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)(internal citations and quotes omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003)(*citing Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). As the Supreme Court has noted, "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146, 118 S.Ct. at 519. Therefore, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). *See also Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). The Seventh Circuit has concluded, "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.*, 395 F.3d at 419 (collecting cases of reiteration).

Once evidence is deemed reliable, it must be excluded if it

is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). The expert testimony must relate to an issue in the case, or it is not relevant. *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795. To "assist" a jury, the Seventh Circuit has explained that the expert testimony will not aid a jury if it "addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *Hall*, 93 F.3d at 1104. Alternatively, if because of the expert's knowledge of relevant facts the expert's particular use of those facts "will help the trier determine a fact, then the opinion is admissible under Rule 702." *Porter*, 791 F.Supp. at 1343.

In its motion to exclude the opinions of Anthony, Industrial first alleges that statements 12-13, 24-27, and 31 are not based on proper foundation. Pawlik counters that the methodology used by Anthony involved the review of "copious case materials." This type of informed analysis of the facts of the case is acceptable under *Daubert*, especially considering Anthony's experience and training in the packaging industry. Industrial has not challenged Anthony's qualifications as an expert, so the analysis involves the reliability of Anthony's opinion.

Industrial contends that Anthony's report includes improper opinions on the law and legal conclusions. Experts are not allowed to testify to legal conclusion or the legal meaning of

words.  ***Harbor Insurance Co. v. Continental Bank Corp.***, 922 F.2d 357, 367 (7th Cir. 1990).  "[T]he law (unless foreign) that a jury applies is the law given to it by the judge in his instructions, not the legal opinion offered by a witness, including an expert witness." ***United States v. Farinella***, ___ F.3d ___, 2009 WL 615408, *4 (7th Cir. March 12, 2009)(*citing* ***United States v. Chube II***, 538 F.3d 693, 701 (7th Cir. 2008).  "District judges, rather than witnesses, must explain to juries the meaning of statutes and regulations." ***Farinella***, 2009 WL 615408 at *4 (*citing* ***Bammerlin v. Navistar Int'l Transportation Corp.***, 30 F.3d 898, 901 (7th Cir. 1994).

In statements 1-3, 5-15, 17-24, and 31-32, Anthony asserts improper legal definitions or asserts legal conclusions.  Whether a duty exists is a matter of law, not a matter for a packaging expert.  Statements 1, 10, 12 and 14 assert that the crate was defective and "unreasonably dangerous," and that Industrial breached its duty.  Statements 2, 5, 6, 8, 9, and 20 label Pawlik's use of force "a reasonably foreseeable act" or "foreseeable."  Statement 3 calls any assumption that pallets/crates such as the one here would be handled only mechanically "unreasonable."  Statement 7 concludes that Pawlik's actions "were neither reckless nor assumptive of a known (or even believed) risk."  Statement 11 asserts causation argument that but for the defects of the crate, the accident would not have occurred.  Statement 13 makes the legal conclusion that Industrial is a seller of crates that puts them "into the commercial stream."  Statement 15 –

clearly without knowledge of the IPLA's legal definitions of "sellers" and "manufacturers" - labels Industrial a crate manufacturer. Statements 17-19 conclude that Industrial breached a reasonable standard of care or express or implied warranties. Statements 21-23 assert that the "open and obvious" defense "is not applicable to the incident crate." Statement 24 asserts that Industrial "knew, or should have known" that its crates would be moved manually. Finally, Statement 32 concludes that Pawlik "was not reckless nor unreasonable in manhandling the crate." All of these statements cross the line from an expert opinion to either legal definitions, legal conclusions, or ultimate questions of fact better left for the jury. As the Seventh Circuit forewarned in **_Zenith_**, Anthony is just giving the "bottom line," which is not helpful to the process here, and all these statements are excluded.

Industrial argues that some of Anthony's statements and conclusions are illogical. Pawlik counters that such disagreements over the logic are not a basis for exclusion, "but rather, [are] fodder for cross examination in that it goes to the expert's credibility, not the admissibility of the expert's opinion." Though it is true that the lack of logic perhaps reveals unreliable methodology, it is also true that such poor reasoning is ripe for cross-examination. Statement 31 is a good example of this: "Industrial knew that sheet metal has the capacity to injury [sic]; therefore, it should have built crates that protected product and people." Armed with the knowledge

that the sheet metal on which Pawlik sliced his arm was *outside* of the crate, in fact, placed in the bed of the Circle R truck by Pawlik himself, and it is common knowledge that sheet metal can cut, Industrial should be anxious for Anthony to proffer such expertise. Therefore, although the logic is lacking in several of the statements in Anthony's report, those statements will not be excluded. Likewise, any and all statements about the types of crates, what makes the "strongest" corner, and standards in the packaging industry - without proffering legal definitions or leaping to legal conclusions - are not excluded.

Industrial protests that statements 28 and 30 are excludable because their probative value is outweighed by the danger of prejudice or confusion. Statement 28 asserts: "[T]he incident crate does not deserve the designation of a crate[.]" This statement, though clearly an opinion, does not rise to the level of a prejudicial comment. Likewise, statement 30, which hypothe-sizes that "it speaks poorly of Industrial that it's still build-ing the same unsafe, unfit, [sic] crates and placing them in the commercial stream, where they can cause injury, as the incident crate did to Pawlik[,]" is clearly outside the scope of this proceeding, conclusory as to what the crate "did" to Pawlik, and prejudicial. Therefore, both statements 28 and 30 are excluded.

Therefore, Industrial's Motion to Exclude Opinions of Plaintiff's Expert, Sterling Anthony, is **GRANTED IN PART** and **DENIED IN PART**.

Finally, Industrial requests an extension of time to dis-

close damages experts.  Regarding the importance of discovery deadlines set by the court and parties' adherence to such, the Northern District heeds the viewpoint of Judge James T. Moody:

> When the court sets a date for the termina-
> tion of discovery, the parties should heed
> the logical import of such a deadline:  the
> parties should complete discovery on or be-
> fore that date and will not receive the bene-
> fit of court supervision of discovery which
> is to occur after that date.  The defendant
> has presented no special circumstances that
> justify an exception to that rule in this
> case.
>
> ***Northern Indiana Public Svc. Co. v. Colorado
> Westmoreland, Inc.***, 112 F.R.D. 423, 424 (N.D.
> Ind. 1986)

The same applies to requests for the court to alter case manage-ment deadlines - especially as trial dates loom near: the re-questing party must provide the court with good cause for such an extension.

Industrial's two-page request for 45 more days generally complains about the number of damages experts disclosed by Pawlik and the evolution of Pawlik's medical condition, but it lacks specific information as to why the previous 90-day extension was not sufficient.  Pawlik's response points out the expanse of time over 2007-2008 during which he provided disclosures and medical records.  With the April 10, 2009, final pretrial conference and a trial date in May 2009, Industrial has not provided a good reason for further extension of the case deadlines. Therefore, the request for an extension is **DENIED**.

———————————

For the foregoing reasons, the Motion for Summary Judgment [DE 18] filed by the defendant, Industrial Engineering and Equipment Company, Inc., on July 11, 2008, is **GRANTED IN PART** and **DENIED IN PART;** the Motion to Strike or for Additional Time to Respond to Plaintiff's Response to Motion for Summary Judgment [DE 22] filed by Industrial Engineering on August 19, 2008, is **GRANTED IN PART** and **DENIED IN PART;** the Motion to Exclude Opinions of Plaintiff's Expert, Sterling Anthony [DE 25] filed by Industrial Engineering on August 26, 2008, is **GRANTED IN PART** and **DENIED IN PART;** and the Motion for Extension of Time to Disclose Damages Experts [DE 29] filed by Industrial Engineering on January 13, 2009, is **DENIED.**

ENTERED this 27th day of March, 2009

s/ ANDREW P. RODOVICH
United States Magistrate Judge